UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LARRY VERSMESSE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SONIC AUTOMOTIVE, INC., et al., <br><br> Defendants. | CASE NO. 1:25-CV-313-HAB-ALT |

**OPINION AND ORDER**

Norma Jean and Larry Versmesse ("Plaintiffs") filed suit in state court on May 15, 2025, against Defendants Sonic Automotive, Inc, Don Perkins, Ian LONG, Mishawaka – F LLC, and Mishawaka – L LLC (collectively "Defendants"), alleging unlawful employment practices under Title VII as well as multiple state tort claims for various actions taken during her employment and including her October 2024 termination. (ECF No. 4). Defendants removed the case to federal court (ECF No. 1), and subsequently filed the instant Motion to Compel Arbitration, or, Alternatively, Partial Motion to Dismiss (ECF No. 9). This motion is fully briefed (ECF Nos. 10, 17, 22, 27, 28), and thus ripe for consideration. For the reasons explained below, the Court will grant the motion to compel arbitration, deny the partial motion to dismiss as moot, and stay the action.

I. **BACKGROUND**

Norma Jean Versmesse began working at the Jordan Lexus dealership in Mishawaka, Indiana, in January 2014. (ECF No. 4, ¶ 2; ECF No. 17, ¶ 1). Ten years into her employment, on January 9, 2024, employees of the dealership were informed of imminent changes to the payroll system and employee compensation structure. (ECF No. 22, at 3). These changes were outlined in

an eight-page document entitled Experience Guide Compensation Program (ECF No. 17-1), the final three pages of which included a "Mutually Binding Arbitration Agreement" (*Id.* at 6–8).

As relevant here, the arbitration provision requires that both the employee and the employer "agree that all disputes and claims between them, including those relating to Employee's employment with the Company and any separation therefrom . . . shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator . . . ." (*Id.* at 6, ¶ 3). The provision goes on to provide examples of claims which would fall under the agreement—"includ[ing], without limitation, claims for discrimination, harassment, or retaliation . . . based upon Title VII of the Civil Rights Act of 1964" and "tort claims including defamation, fraud, and emotional distress" (*Id.* ¶ 3)—as well as explicitly listing the types of claims excluded from the Agreement (*Id.* ¶ 4). The agreement ends with a bolded, all-capitals paragraph stating that, by agreeing to the provision, "BOTH THE COMPANY AND [THE EMPLOYEE] GIVE UP OUR RIGHTS TO TRIAL BY JURY." (*Id.* at 8). The final page of the agreement also reflects the signature of Norma Jean Versmesse, dated January 9, 2024. (*Id.*). Plaintiffs contend, however, that Norma Jean was never given the full agreement, only the last page, and was pressured into signing in order to receive her paycheck. (ECF No. 17, at 2–4).

Norma Jean was terminated from her employment with Defendants on October 28, 2024, nine months after signing the Arbitration Agreement. (ECF No. 4, ¶ 25). She and her husband filed suit in St. Joseph Superior Court against Defendants on May 15, 2025. (ECF No. 4). In the Complaint, Plaintiffs allege three state tort claims—defamation, false imprisonment, and conversion—as well as discriminatory treatment and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (*Id.*). Defendants removed the Complaint to this Court (ECF No. 1), and subsequently moved to compel arbitration or, in the alternative,

partially dismiss the case (ECF No. 9). Defendants contend Norma Jean signed a binding arbitration agreement which covers all claims listed in the Complaint, thus the Court should compel arbitration and stay the action. (ECF No. 10). Plaintiffs disagree that the agreement is enforceable and covers all claims. (ECF No. 17).

On October 8, 2025, the Court granted Plaintiffs leave to amend the complaint solely to add a loss of consortium claim for Larry (ECF No. 23) which Plaintiffs filed on October 10, 2025 (ECF No. 24). Defendants then filed a supplemental brief in support of its motion to compel arbitration to argue that Larry's claim—which is fully derivative of Norma Jean's claims—should also be sent to arbitration, or else dismissed as a matter of law for lack of jurisdiction. (ECF No. 27). Plaintiffs responded by pointing again to their arguments against compelling all of Norma Jean's claims to arbitration but consenting to Larry's claim being arbitrated should the Court decide all of Norma Jean's claims are subject to arbitration. (ECF No. 28).

## II.    LEGAL STANDARD

Under the FAA, if "the parties have an arbitration agreement and the asserted claims are within its scope," the court must compel arbitration and stay the case. *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1173 (E.D. Wis. 2017) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). While "[t]he FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet[,] ... courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir.

3

2002) (citing cases); *see also Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 725 (N.D. Ill. 2017); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

### III.    DISCUSSION

"Generally, federal policy favors arbitration, and once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Section 2 of the Federal Arbitration Act ("FAA") states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

The Supreme Court has held that arbitration agreements in the employment context are enforceable under the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118–124 (2001). Under the FAA, three things are needed to compel arbitration: (1) a written arbitration agreement, (2) a dispute within the agreement's scope, and (3) a refusal to arbitrate that dispute. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F..3d 682, 687 (7th Cir. 2005). And "[w]hether parties have a valid arbitration agreement at all" is a "gateway matter[ ]" to the question of arbitrability. *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506 (7th Cir. 2018) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)). Additionally, the question of arbitrability—as in, whether the parties must submit a particular dispute to arbitration—is "an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise." *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "An agreement to arbitrate is treated like any other contract," so the court looks to the "state law that governs the formation of contracts to determine if there was a valid agreement." *Baumann v. Finish Line, Inc.*, 421 F. Appx. 632, 634

4

(7th Cir. 2011) "The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties." *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-13 (Ind. 2009).

Plaintiffs are not disputing the existence of the arbitration agreement or that Norma Jean signed it, just that the agreement should not be enforced and that some of the tort claims do not fall within their scope. Specifically, Plaintiffs argue the agreement is unconscionable because (1) it was "difficult to find, read and understand" due to a small font and the agreement coming at the end of an eight-page document; (2) she had no opportunity to review with her attorney, nor an opportunity to modify or suggest changes to the agreement; and (3) she was threatened with non-payment if she refused to sign. Plaintiffs also argue two of the tort claims—false imprisonment and conversion—are not covered by the agreement because those types of claims were not specifically listed.

### A. Enforceability

Plaintiffs' unconscionability argument bears on the enforceability or validity of the arbitration provisions. *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."). A contract is unenforceable if it is unconscionable, and under Indiana law, "to be unconscionable, a contract 'must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.'" *Precision Homes of Ind., Inc. v. Pickford*, 844 N.E.2d 126, 132 (Ind. Ct. App. 2006) (quoting *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind. Ct. App. 1989)). Unconscionability comes in two types: substantive and procedural. "Substantive unconscionability refers to oppressively one-sided and

5

harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract." *DiMizio v. Romo*, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001).

While Plaintiffs attempt to argue both procedural and substantive unconscionability, the crux of those arguments—Norma Jean wasn't given an opportunity to review the document or consult with her lawyer, she felt pressured into signing in order to be paid or retain employment, and the physical presentation of the agreement was confusing and/or lacking—all fall under the umbrella of "procedural" unenforceability and will be addressed as such. And from the outset, the second two of Plaintiffs' arguments can be done away with quickly. Notably, Plaintiffs cite almost no law in support of their unconscionability argument, and what law they do cite—a district court case from Illinois and an Eleventh Circuit case—is irrelevant to the question of unconscionability of a contract in *Indiana* law. Plaintiff has provided no support for the assertion that the pressure she felt to agree to the arbitration provision, or else risk nonpayment or termination, renders the agreement procedurally unconscionable. Indeed, case law from Indiana and across the country indicates the contrary, and her acceptance of continued employment for many months after the imposition of an arbitration agreement indicates her acceptance of its terms. *See Kreimer v. Delta Faucet Co.*, 2000 WL 962817, at *4 (S.D. Ind. June 2, 2000) ("Ms. Kreimer's acceptance of continued at-will employment with Delta Faucet shows that an agreement was reached regarding the Policy and that this agreement is binding as to any claims coming within the Policy's scope."); *see also Kinnebrew v. Gulf Ins. Co.*, 1994 WL 803508, at *2 (N.D. Tex. Nov. 28, 1994) ("[F]ederal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter."); *Porter v. Cigna*, 1997 WL 1068630, at *1 (N.D. Ga. Mar. 26, 1997) ("[P]laintiff

6

admits that defendant notified him of the new policy. Plaintiff's continued employment after such notification and failure to object to the new condition demonstrate his intent to be bound.").

Similarly, Plaintiffs' unsupported arguments that the agreement was "buried" in the eight-page document or that the font was unreadable are plainly without merit. *See Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004) (finding that an arbitration clause was not "buried" in a ten page contract when it contained the heading "Arbitration" and the clause was immediately followed by a signature line). Here, the Arbitration Agreement was set off from the rest of the compensation packet by a capitalized heading declaring the contract was a "Mutually Binding Arbitration Agreement." (ECF No. 17-1, at 6). Additionally, while the text was small, it is certainly readable and the bolded, capitalized paragraph above the signature line makes it remarkably clear as to what the employee and employer are agreeing. (*Id.* at 8).

Plaintiffs' first argument—that Norma Jean was only ever given the final page of the agreement—requires some further inquiry but is ultimately just as fruitless. At this stage, it is unclear from the Plaintiffs' briefing just how much of and when the Agreement was given. All at once Plaintiffs allege the Agreement was "buried" in the Compensation Agreement document by starting at the sixth page, but also that Norma Jean was never given the full Compensation Agreement, or even the full three pages of the Arbitration Agreement but instead was only handed the final page of the Arbitration Agreement and told to sign. (ECF No. 17, at 3–6). Nevertheless, the final page of the Agreement provides, in capitalized and bolded letters: "I understand by agreeing to this binding arbitration provision, both the company and I give up our rights to trial by jury. I further understand that this binding arbitration agreement is a contract, however, it does not constitute a 'contract of employment' as it does not cover any other terms and conditions of my employment." (ECF No. 17-1, at 8). Whether or not she was given all eight pages, the three pages

of just the Arbitration Agreement, or just the final page to sign, Norma Jean's dated signature on the final page indicates her consent to the terms therein. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) ("Even if we limit our review to the one page that [Plaintiff] signed, it is impossible to avoid the conclusion that he agreed to arbitration."); *see also DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.,* 179 F. Supp. 2d 896, 907 (N.D. Ind. 2001) ("By signing the application, [plaintiff] effectively concedes she had an opportunity to review the [contract], and cannot now avoid its terms.").

Indiana law is clear that "failure to read [a] contract's provisions does not relieve a party from the terms of that agreement." *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1059 (S.D. Ind. 2000). There is, of course, a limited exception for cases in which "a party is by trickery prevented from reading the document or by trust and confidence lulled into believe another's representation as to its character or content." *Ruff v. Charter Behav. Health Sys. of N.W. Ind., Inc.*, 699 N.E.2d 1171, 1175 (Ind. Ct. App. 1998). But Plaintiffs do not argue either of those circumstances existed here, nor does the evidence provide any inference that Defendants were in a particular position of trust or engaged in any sort of trickery. Rather, the only action Plaintiffs point to is the "pressure" Norma Jean felt to sign; but, as discussed above, that pressure is not enough to render the contract unenforceable.

Simply put, Norma Jean had a duty to read the contract that she signed. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 (7th Cir. 1989) ("[B]asic contract law establishes a duty to read the contract; it is no defense to say, 'I did not read what I was signing.'"); *see also Clanton v. United Skates of America,* 686 N.E.2d 896, 899–900 (Ind. Ct. App. 1997) ("Under Indiana law, a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it."). Therefore, based on Norma

Jean's signature and her receiving the benefit of continued employment, a valid arbitration agreement binds the parties here, and the Court will compel arbitration.[1]

### B. Scope of the Arbitration Agreement

Plaintiffs' also argue that the Arbitration Agreement—which specifically covers "tort claims including defamation, fraud, and emotional distress" (ECF No. 17-1, at 6)—does not cover two of the alleged state tort claims here: false imprisonment and conversion.

If a valid agreement to arbitrate exists between the parties, the burden is on the party opposing arbitration to show that the claims at issue are not covered by the agreement. *See Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 91 (2000). Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012), and a request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960). Additionally, any "ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.,* 489 U.S. 468, 475–76 (1989).

"In order to determine whether the parties have agreed to submit this particular dispute to arbitration, we must turn to the specific language of the arbitration clause." *Int'l Bhd. of Elec. Workers, Local 21 v. Ill. Bell Tel. Co.*, 2007 WL 1880205, at *5 (7th Cir. 2007); *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and

---

[1] As mentioned above, Plaintiffs have consented to Larry's loss of consortium claim also being subject to arbitration should the Court decide all of Norma Jean's claims are arbitrable. (ECF No. 28). In light of the Plaintiffs' consent, the Court need not decide if Larry's derivative claims are independently subject to mandatory arbitration.s Because the Plaintiffs do not object to Larry also being subject to arbitration, the Court will continue to refer to the Plaintiffs in the plural.

9

a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

The Court begins by recognizing that the language used in the Arbitration Agreement here is incredibly broad, despite Plaintiffs' attempt to argue otherwise. The Agreement begins by providing:

> Except as otherwise set forth in this agreement, the Company and the Employee hereby agree to adopt binding arbitration as the mechanism and method *for all legal disputes and claims between them* including without limitation those relating to Employee's employment with the Company or any separation therefrom and claims by Employee against the Company's parents, subsidiaries, affiliates, directors, employees, or agents, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein.

(ECF No. 17-1, at 6 ¶ 1).

Generally, language such as "for all legal disputes and claims" is found to be incredibly inclusive and points toward allowing arbitration of nearly all claims. *See Ross Bros. Constr. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 876 (7th Cir. 2002) (recognizing that the phrase "any controversy" uses the "broadest conceivable language" which thereby creates an all-encompassing arbitration clause in which "the parties intended the scope of the submission to be unlimited"); *see also AT&T Techs.*, 475 U.S. at 60 (holding a presumption to arbitrate "is particularly applicable where the clause is . . . broad"). Consistent with the Seventh Circuit, we also find that the phrase "all legal disputes and claims" utilizes the broadest conceivable language in constructing an arbitration agreement.

Nevertheless, Plaintiffs contend the Agreement limits the types of tort claims to which arbitration applies by stating "tort claims including defamation, fraud, and emotional distress" without listing other types of tort claims. (ECF No. 17-1, at 6 ¶ 3). By not specifically listing the

10

torts of false imprisonment or conversion, Plaintiffs argue, the Agreement does not consider tort claims beyond those three listed. (ECF No. 17, at 9).

Plaintiffs are mistaken. First, Plaintiffs' reading selectively extracts the smallest portion of the provision listing examples of claims covered by the agreement, a lengthy sentence beginning by pronouncing that "[c]laims subject to arbitration under this Agreement include, *without limitation* . . ." before enumerating various possible claims. (ECF No. 17-1, at 6 ¶ 3 (emphasis added)). On its face, then, the listed examples of claims that follow are clearly intended to be non-exclusive. But even if the agreement had failed to include the "without limitation" language, there is simply no basis for Plaintiffs' argument that the word "including" on its own works as a limitation. Indeed, the Seventh Circuit recognized the opposite in *Bernal v. NRA Group, LLC*, when it found a contract with a phrase allowing for the collection of "any costs including reasonable attorney's fees" was a phrase meant to be read broadly "because the word 'including' generally 'introduces examples, not an exhaustive list.'" 930 F.3d 891, 894 (7th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012)); *see also Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation."). Finally, the Agreement makes even more explicit that the types of claims listed in Paragraph 3 are meant to be read broadly by acknowledging in the very next paragraph "[t]he *only* disputes and actions excluded from this Agreement" before listing eight specific categories of disputes—none of which include the torts Plaintiffs allege in their complaint. (ECF No. 17-1, at 6 ¶ 4).

Based on this broad construction of the agreement and the presumption that disputes are to be arbitrated, it is clear, then, that the two tort claims to which Plaintiffs point—false imprisonment and conversion—are within the scope of the arbitration agreement.

### IV. CONCLUSION

For these reasons, the Court GRANTS the motion to compel arbitration and DENIES the partial motion to dismiss as moot due to the Amended Complaint. (ECF No. 9). The Court hereby STAYS this case and DIRECTS the CLERK to remove it from the active docket for statistical purposes. The parties may file a request to lift the stay and return the case to the active docket after the conclusion of arbitration.

SO ORDERED on November 10, 2025.

        s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT